JAMES T. BURTON (USB 11875)
*jburton@kmclaw.com*
JOSHUA S. RUPP (USB 12647)
*jrupp@kmclaw.com*
**KIRTON | McCONKIE**
1800 World Trade Center
60 East South Temple
P.O. Box 45120
Salt Lake City, Utah 84145-0120
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

*Attorneys for Plaintiff*
*Live-Right, LLC*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LIVE-RIGHT, LLC, an Idaho Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>LIVE-RIGHT, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Civil Action No.: 2:16-cv-00076-BSJ<br><br>**COMPLAINT**<br><br>Judge: Bruce S. Jenkins<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Live-Right, LLC ("Live-Right"), hereby complains and alleges against Defendant Live-Right, LLC ("Defendant") as follows:

### THE PARTIES

1.  Live-Right is an Idaho limited liability company having its principal place of business in Sandy, Utah.

2. Defendant is a Delaware limited liability company having its principal place of business in Wilmington, Delaware.

## JURISDICTION AND VENUE

3. This is an action for trademark infringement, false advertising, and unfair competition under the Lanham Act, common law trademark infringement, violation of the Utah Deceptive Trade Practices Act, and unfair competition.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 28 U.S.C. 1338(a) (trademarks), and 15 U.S.C. § 1121 (trademarks).

5. This Court has supplemental jurisdiction over Live-Right's state law claim under 28 U.S.C. § 1367(a) because that claim arises from a common nucleus of operative facts alleged in Live-Right's federal claims.

6. This Court has personal jurisdiction over Defendant because upon information and belief Defendant transacts business in this district (including by marketing its infringing product in and into this district and by infringing Live-Right's trademarks in this district), the actions giving rise to this lawsuit have occurred in this district, and Defendant has caused damages to Live-Right in this district.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because there is personal jurisdiction over Defendant, and because a substantial part of Defendant's acts and omissions giving rise to Live-Right's claims occurred in this district.

## GENERAL ALLEGATIONS

I. **LIVE-RIGHT**

8. Live-Right was founded in 2001 by Sandra Phillips and Don Aslet.

9. Live-Right designs, manufacturers, and distributes fun, innovative, and safe infant and toddler care products.

10. Live-Right's products demonstrate a commitment to improved health for toddlers and infants through oral hygiene and product safety.

11. Live-Right is the owner of the innovative Baby Banana Brush product.

12. The Baby Banana Brush is a flexible infant toothbrush.

13. The Baby Banana Brush has been FDA approved and tested in private laboratories.

14. In addition to being a flexible toothbrush, the Baby Banana Brush is also a training toothbrush.

15. Since being formed in 2001, Live-Right has sold over four million toothbrushes, including 670,000 Baby Banana toothbrushes without handles and 2,990,000 Baby Banana toothbrushes with handles.

16. The Baby Banana Brush has been sold in many countries, including in the United States, China, Japan, and Korea.

17. The Baby Banana Brush is also sold in several domestic retailers, including Toys R Us; Babies R Us; Bye, Bye Baby; Bed Bath and Beyond; and Amazon.

18. The Baby Banana Brush has received significant industry recognition, including earning, among other awards, the Seal of Approval from The National Parenting Center.

19. In 2013, the Baby Banana Brush was featured as one of the Hot New Toys of 2013 in ToyDirectory.com.

## II. LIVE-RIGHT'S MARK

20. Live-Right has continuously provided its Baby Banana Toothbrush using the BABY BANANA mark since at least 2007.

21. The United States Patent and Trademark Office ("USPTO") granted Live-Right a federal registration (U.S. TM Reg. No. 3,747,206) for the BABY BANANA mark on February 9, 2010, a copy of which is attached as Exhibit A.

22.     Live-Right's BABY BANANA mark has achieved incontestability status pursuant to 15 U.S.C. § 1065.

23.     Live-Right's BABY BANANA mark referenced above is subsequently referred to herein as "Plaintiff's Mark."

24.     In addition to federal trademark rights, Live-Right also enjoys common law trademark rights in Plaintiff's Mark.

25.     Live-Right is the owner of Plaintiff's Mark.

26.     Live-Right's toothbrush products have been widely advertised and extensively promoted under Plaintiff's Mark, and Plaintiff's Mark has become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Live-Right, its high quality baby toothbrush products, and of its goodwill.

27.     Live-Right enjoys remarkable success and an enviable reputation in its field due in large part to its use of and rights in Plaintiff's Mark.

28.     Live-Right has made great expenditures and sacrifices to achieve the success it now enjoys in Plaintiffs' Mark.

29.     Indeed, as a result of Live-Right's favorable reputation and considerable investment in and promotion of Plaintiff's Mark, Plaintiff's Mark has become an indicator of Live-Right's high quality baby toothbrush products.

30.     Live-Right enforces its rights under Plaintiff's Marks in order to ensure Live-Right's continued success and excellent reputation.

31.     Plaintiff's Mark has been extensively and continuously advertised and promoted to the public by Live-Right through various means and modes, including but not limited to, over the Internet (including at www.babybananabrush.com) ("Plaintiff's Website").

32.     Because of Live-Right's advertising and promotion under Plaintiff's Mark, the public has come to recognize Live-Right's baby toothbrush products utilizing Plaintiff's Mark as

solely emanating from Live-Right.

33.     As a result of Live-Right's extensive use, advertising, promotional efforts, market recognition, commercial success, and wide distribution, Plaintiff's Mark has become famous and is recognized as a distinctive symbol of the highest quality of baby toothbrush products.

34.     Plaintiff's Mark is an extremely valuable asset of Live-Right.

## II. DEFENDANT'S INFRINGING CONDUCT

35.     Defendant is managed by Mr. Zhou Wu.  *See* Certificate of Formation of Live-Right, LLC and associated Apostille from the Delaware Secretary of State, attached hereto as Exhibit B.

36.     Upon information and belief, Mr. Wu is affiliated with Yisaisi in Beijing, China.

37.     Defendant promotes identical goods to Plaintiff's Mark.

38.     Specifically, Defendant owns and operates www.babybananatoothbrush.com ("Defendant's Website").

39.     The only difference in the domain name of Plaintiff's Website and Defendant's Website is the inclusion of "tooth" in Defendant's Website.

40.     Defendant's Website is a virtual copy of Plaintiff's Website.

41.     Indeed, Defendant intentionally copied Plaintiff's Website.

42.     Moreover, Defendant promotes and offers for sale an alleged "Baby Banana Toddler Training Toothbrush" and "Baby Banana Infant Teething Toothbrush" on Defendant's Website.

43.     Defendant uses Plaintiff's Mark in the products advertised and offered for sale on Defendant's Website (hereinafter, "Infringing Marks").

44.     Defendant's use of the Infringing Marks is confusingly similar to Plaintiff's Mark.

45.     Defendant's use of the Infringing Marks is likely to cause consumer confusion and a false association between Live-Right's baby toothbrush products and the goods offered by

5

Defendant utilizing the Infringing Marks, falsely leading consumers to believe that the products emanate from the same source or that Live-Right and Defendant are somehow affiliated.

46.   Such diversion has resulted in, and will continue to result in, substantial and irreparable harm to Live-Right and to consumers in this district.

47.   Defendant's offering to the public of goods under the Infringing Marks has been and is without permission or authority of Live-Right.  Indeed, such public offerings are without license from Live-Right.

48.   The Infringing Marks have been used by Defendant and offered to the public utilizing this district as a forum for its infringing activities with knowledge that the Infringing Marks are not authorized by Live-Right.

49.   By using the Infringing Marks and offering baby toothbrush products for sale under the Infringing Marks, including but not limited to the promotion of goods by Defendant on Defendant's Website which are confusingly similar and/or identical to the baby toothbrush products sold by Live-Right, Defendant has misrepresented and falsely described to the general public the origin and source of Defendant's goods so as to deceive the public and deliberately create a likelihood of confusion, cause mistake, or deceive as to the affiliation, connection, or association of Defendant with Live-Right, or as to the origin, sponsorship, or approval of Defendant's goods or commercial activities by the ultimate purchaser as to both the source and sponsorship of Defendant's goods.

50.   Upon information and belief, Defendant's goods offered under the Infringing Marks are inferior in quality to the baby tooth brush products provided by Live-Right, and therefore have, do, and will continue to damage the goodwill Live-Right has developed in connection with offering its baby toothbrush products under Plaintiff's Mark.

51.   Defendant, upon information and belief, with full knowledge of the notoriety of Plaintiff's Mark intended to, and did, trade on the goodwill associated with Plaintiff's Mark,

and has misled and will continue to confuse and mislead the public into assuming a connection between Live-Right and Defendant by Defendant's offer to the public of its goods under the Infringing Marks.

52. The use by Defendant of the Infringing Marks constitutes a knowing and willful use of a false designation of origin and a false description or representation that wrongly and falsely designates Defendant's goods offered to the public by Defendant as originating from, or connected with, Live-Right, and constitutes utilizing false descriptions or representations in commerce.

53. The imitation, reproduction, and other unauthorized use of the Infringing Marks causes irreparable injury to Live-Right, including injury to its business reputation and goodwill.

54. Defendant's use of the Infringing Marks has, does, and is likely to permit Defendant to pass off its goods as those of Live-Right, all to the detriment of Live-Right, and to the unjust enrichment of Defendant.

55. Defendant's use of the Infringing Marks has caused, currently causes, and is likely to continue to cause, damage to Live-Right by tarnishing the valuable reputation and image associated with Live-Right and its baby toothbrush products.

56. Defendant has further passed off its goods utilizing the Infringing Marks in interstate commerce as being affiliated with those of Live-Right by Defendant's activities and many continuing misrepresentations to the consuming public, members of which are likely to and do believe that Defendant's goods utilizing the Infringing Marks are associated with Live-Right.

57. Defendant's unlawful activity results in irreparable harm and injury to Live-Right. Among other harms, it:

    a. Deprives Live-Right of its right to determine the manner in which its goods are presented to the general public;

  b. Deceives the public as to the origin and sponsorship of Defendant's goods utilizing the Infringing Marks;

  c. Wrongfully trades upon Live-Right's reputation and exclusive rights in its Plaintiff's Mark; and

  d. To the extent Defendant's goods utilizing the Infringing Marks are or may be of inferior quality or unauthorized for sale or distribution, irreparably harms and injures Live-Right's reputation.

56. Live-Right is entitled to an injunction restraining Defendant, its officers, agents, servants, employees, and attorneys, and all persons acting in concert with them, from engaging in any further acts in violation of Live-Right's rights.

57. Live-Right is further entitled to recover from Defendant the damages, including treble damages, interest, attorneys' fees, and costs it has sustained and will sustain and any gains, profits, and advantages obtained by Defendant as a result of Defendant's acts as alleged herein. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Live-Right.

## CAUSES OF ACTION

### COUNT I
### (TRADEMARK INFRINGEMENT UNDER § 43(a)(1)(A) OF THE LANHAM ACT)

58. Live-Right realleges and incorporates by reference all of the foregoing paragraphs.

59. Defendant's use of the Infringing Marks is the improper use in commerce of words, terms, and/or names that are likely to cause confusion, mistake, or deception as to whether Defendant is affiliated, connected, or associated with Live-Right (including Plaintiff's Mark) and/or as to whether Live-Right originated, sponsored, or approved of Defendant's goods utilizing the Infringing Marks.

60. By so acting, Defendant has violated § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

61. Live-Right has been and will continue to be damaged by such wrongful actions.

62. Because Defendant's actions were intentional, willful and/or deliberate, Live-Right is entitled to an award of Defendant's profits, any damages sustained by Live-Right, and costs of this action, including treble damages under § 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

63. By reason of the foregoing, Live-Right is further entitled to injunctive relief and monetary damages against Defendant.

## COUNT II
### (False Advertising Under § 43(a)(1)(A) of the Lanham Act)

64. Live-Right realleges and incorporates by reference all of the foregoing paragraphs.

65. Defendant has made false or misleading statements of fact, including, *inter alia*, on Defendant's Website, regarding Defendant's use of the Infringing Marks.

66. Such statements by Defendant have deceived or has the capacity to deceive a substantial segment of the Live-Right's potential consumers into believing that Live-Right and Defendants are somehow affiliated or that Live-Right has sponsored, approved, and/or authorized Defendant's use of the Infringing Marks.

67. Defendant's deception is material, in that it is likely to improperly influence the consumer public as it relates to Defendant's use of the Infringing Marks, on the one hand, and Live-Right's baby tooth brush products and Plaintiff's Mark, on the other hand.

68. Defendant's use of the Infringing Marks is in interstate commerce, including without limitation, on Defendant's Website.

69. Defendant's use of the Infringing Marks has resulted in damages to Live-Right.

70. Defendant has violated 15 U.S.C. § 1125(a).

71. Because Defendant's actions were intentional, willful and/or deliberate, Live-Right is entitled to an award of Defendant's profits, any damages sustained by Live-Right, and costs of this action, including treble damages under § 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

72. By reason of the foregoing, Live-Right is further entitled to injunctive relief and monetary damages against Defendant.

## COUNT III
### (TRADEMARK INFRINGEMENT UNDER § 32 OF THE LANHAM ACT)

73. Live-Right realleges and incorporates by reference all of the foregoing paragraphs.

74. Live-Right possesses a valid federal trademark registration for Plaintiff's Mark issued by the USPTO. *See* Exhibit A.

75. Defendant's actions as described above, including Defendant's unauthorized use of the Infringing Marks to promote its products, is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Live-Right, or as to the origin, sponsorship, or approval of Defendant's products by Live-Right. Defendant's conduct described herein constitutes trademark infringement of Plaintiff's Mark in violation of § 32 of the Lanham Act (15 U.S.C. § 1114).

76. Defendant's trademark infringement has caused and continues to cause damage and irreparable injury to the value and goodwill of Plaintiff's Mark, as well as damages and irreparable injury to Live-Right's business, goodwill, and reputation.

77. Live-Right has no adequate remedy at law because damages are continuing and difficult to ascertain. On information and belief, Defendant's continued use of Plaintiff's Mark is deliberate, willful, fraudulent, and constitutes a knowing infringement of Plaintiff's Mark, making this case exceptional.

78. Because Defendant's actions, on information and belief, were intentional, willful and/or deliberate, Live-Right is entitled to an award of Defendant's profits, any damages sustained by Live-Right, and costs of this action, including treble damages under § 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

79. By virtue of the foregoing, Live-Right is entitled to injunctive relief and monetary damages against Defendant.

### COUNT IV
### (COMMON LAW TRADEMARK INFRINGEMENT)

80. Live-Right realleges and incorporates by reference all of the foregoing paragraphs.

81. Plaintiff's Mark is distinctive and has acquired secondary meaning.

82. Defendant's actions, as alleged above, infringe Live-Right's common law trademark rights in Plaintiff's Mark under federal common law and Utah common law.

83. Moreover, Live-Right has acquired extensive common law rights in the LIVE-RIGHT mark. Indeed, Live-Right has been using the LIVE-RIGHT mark on its toothbrush products since 2007.

84. Defendant has infringed Live-Right's common law rights in and to the LIVE-RIGHT mark by improperly using the LIVE-RIGHT mark in commerce.

85. By reason of the foregoing, Live-Right is entitled to injunctive relief and monetary damages against Defendant for infringement of Live-Right's common law rights to Plaintiff's Mark and the LIVE-RIGHT mark.

86. The infringing activities of Defendant, on information and belief, are willful and intentional, thereby justifying an award of exemplary and/or punitive damages.

### COUNT V
### (UTAH DECEPTIVE TRADE PRACTICES – U.C.A. § 13-11A-3)

87. Live-Right realleges and incorporates by this reference all of the foregoing

paragraphs.

88.     By using the Infringing Marks, Defendant has passed off its goods as those of Live-Right.

89.     On information and belief, Defendant knowingly made a false representation as to the source, sponsorship, approval, or certification of its goods by its use of the Infringing Marks with knowledge of Plaintiff's Mark.

90.     The foregoing misconduct of Defendant constitutes deceptive trade practices under Utah Code Annotated § 13-11A-3.

91.     Live-Right is entitled to recover damages to fairly and reasonably compensate it for Defendant's conduct.

92.     Live-Right is entitled to prevent, restrain, and enjoin Defendant from current and future uses of Plaintiff's Marks.

93.     Live-Right is entitled to an award of its attorneys' fees and its costs for being required to file and prosecute this action pursuant to Utah Code Annotated § 13-11a-4(2)(c).

94.     Live-Right has no adequate remedy at law, has suffered and is continuing to suffer irreparable harm as a result of Defendant's acts, and is, therefore, entitled to preliminary and permanent injunctive relief to enjoin Defendant from further misconduct, including the shutting down of Defendant's Website.

## COUNT VI
### (UNJUST ENRICHMENT)

95.     Live-Right realleges and incorporates by this reference all of the foregoing paragraphs.

96.     Defendant has benefited from the improper, unfair, and unauthorized use of Live-Right's exclusive trademark rights and goodwill attendant thereto, as set forth above.

97.     Defendant has knowledge and fully appreciates the benefits it has received from

Live-Right as a result of such actions.

98. Defendant would be unjustly enriched if it were permitted to retain the proceeds obtained from such actions.

99. Equity and good conscience dictate that Defendant be required to account for and turn over to Live-Right an amount equal to the value of the benefits conferred upon it.

100. Equity and good conscience further dictate that Defendant be required to assign Defendant's Website to Live-Right.

## JURY DEMAND

Live-Right hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Live-Right demands judgment against Defendant as follows:

A. Preliminarily and permanently enjoining Defendant, and all other persons participating or acting in concert with it, from infringing any of Live-Right's rights in Plaintiff's Mark;

B. Preliminarily and permanently enjoining Defendant, and all other persons participating or acting in concert with it, from using any marks similar to Plaintiff's Mark that are likely to cause confusion or mistake as to whether Defendant is authorized by or affiliated with Live-Right and as to whether Defendant's goods utilizing the Infringing Marks have been authorized or sponsored by Live-Right;

C. Preliminarily and permanently enjoining Defendant, and all other persons participating or acting in concert with it, from engaging in unfair competition;

D. Preliminarily and permanently enjoining Defendant, and all other persons acting in concert with it, from making a false representation as to the source, sponsorship, approval, or certification of goods utilizing the Infringing Marks;

E. Preliminarily and permanently enjoining Defendant, and all other persons acting

in concert with it, from making a false representation as to affiliation, connection, association with, or certification by another, of good utilizing the Infringing Marks;

F.	An order of the Court directing Defendant to deliver up to Live-Right all literature, advertisements, business forms, signs, and any other representations, regardless of form, which are in, or come to be in, Defendant's possession, custody, or control and which bear the Infringing Marks or any confusingly similar variant, and an order from the Court compelling Defendant to notify its customers, agents, and representatives that the Infringing Marks or any confusingly similar variant is not connected with Live-Right;

G.	An order from the Court assigning Defendant's Website to Live-Right;

H.	An order from the Court directing Defendant to provide an accounting of all revenues and profits gained by Defendant while engaging in the acts complained of in this Complaint;

I.	Awarding Live-Right its actual damages, and awarding Live-Right any additional damages that the Court deems just and equitable under the circumstances of the case;

J.	Awarding Live-Right treble damages in accordance with § 35 of the Lanham Act (15 U.S.C. § 1117) on the claim asserted under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a);

K.	Establishment of a constructive trust consisting of profits from or obtained by Defendant's wrongful acts, to be held for the benefit of Live-Right;

L.	Awarding Live-Right damages to which it is entitled based upon Defendant's unjust enrichment;

M.	Awarding Live-Right prejudgment interest at the rate established under 26 U.S.C. § 6621(a)(2) from the date of service of this Complaint through the date of judgment;

N.	Awarding Live-Right its allowable costs and attorneys' fees, including but not limited to, pursuant to Utah Code Annotated § 13-11A-4(2)(c); and

O.	Awarding Live-Right such other and/or further relief as is just and equitable.

DATED this 29th day of January, 2016.

        Respectfully submitted,

        KIRTON │ McCONKIE


        By: /s/James T. Burton
          James T. Burton
          Joshua S. Rupp

        Attorneys for Plaintiff
        *Live-Right, LLC*